UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GARY M. REHO, | : | |
|     Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:16-cv-1692 (JCH) |
| v. | : | |
| | : | |
| SACRED HEART UNIVERSITY, INC., | : | MARCH 15, 2017 |
|     Defendant. | : | |

**RULING RE: MOTION FOR PARTIAL DISMISSAL (DOC. NO. 13)**

**I.    INTRODUCTION**

On October 11, 2016, plaintiff Gary M. Reho ("Reho") instituted this suit against his former employer Sacred Heart University, Inc. ("SHU"). See Compl. (Doc. No. 1) at 1. Reho alleges that his employment was terminated in violation of the Americans with Disabilities Act ("Count 1"), see Compl. ¶¶ 25–30, and the Connecticut Fair Employment Practices Act ("Count 2"), see Compl. ¶¶ 31–36. Reho also claims that SHU "intended to inflict emotional distress upon [him] or knew or should have known that emotional distress was a likely result of terminating [Reho] because [he] was a loyal employee for over twenty-five years and [SHU] was aware that continuing to and returning to work would improve his 'cognitive functioning and emotional wellbeing'" ("Count 3"). Compl. ¶ 37. Included among Reho's damages demands was a request for "punitive damages under C.G.S.A. § 46a-60(a)(1)." See Compl. at 8.

SHU filed a Motion for Partial Dismissal, in which it contends that Count 3 should be dismissed, whether it is based on a theory of intentional infliction of emotional distress or negligent infliction of emotional distress, and that punitive damages are not available under the Connecticut Fair Employment Practices Act ("CFEPA"). See Mot. for Partial Dismissal ("Motion") (Doc. No. 13) at 1.

1

After initially failing to respond to the Motion, see Order (Doc. No. 15), Reho simultaneously filed an Amended Complaint, see generally First Am. Compl. ("FAC") (Doc. No. 22), and opposed the Motion to the extent it was not rendered moot by the FAC, see Pl.'s Obj. to Def.'s Mot. for Partial Dismissal ("Obj.") (Doc. No. 23) at 1. First, the FAC removes any request for punitive damages pursuant to section 46a-60(a)(1) of the Connecticut General Statutes.[1] See Obj. at 1; FAC at 8. Second, Reho clarified that he is asserting a claim of intentional infliction of emotional distress—not negligent infliction of emotional distress—that he argues has been sufficiently pleaded. See Obj. at 1.

SHU replied in a timely manner. See generally Reply to Pl.'s Opp'n to Mot. to Dismiss ("Reply") (Doc. No. 26).

For the reasons set forth below, SHU's Motion to Dismiss is **GRANTED IN PART** and **TERMINATED AS MOOT IN PART**.

## II.    FACTS[2]

In July 1990, SHU hired Reho to serve as its head football coach. FAC ¶ 9. Several years later, Reho assumed the position of Associate Director of Athletics, while continuing to serve as head football coach. Id. ¶ 11. In July 1997, Reho accepted a

---

[1] Apart from the removal of this one prayer for relief, the original Complaint and the FAC are identical. Compare Compl., with FAC. SHU notes Reho's failure to comply with "the requirements set forth in Rule 15(a), (c)," as well as the lack of any "motion for leave pursuant to Local Rule 7(f)," but does not object to the court's consideration of the FAC as the operative complaint. See Reply to Pl.'s Opp'n to Mot. to Dismiss (Doc. No. 26) at 1 n.1. This makes perfect sense, as the only change in the FAC is one that remedies a defect SHU identified in its Motion. Therefore, the court treats the FAC as the operative complaint.

[2] For the purpose of ruling on SHU's Motion, the court accepts as true all well-pleaded factual allegations in the FAC. See Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc., 847 F.3d 92, 93 (2d Cir. 2017) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)). Thus, the facts set forth here are drawn from the FAC.

new position at SHU: Director of the William H. Pitt Health and Recreation Center and Athletic Facilities ("Pitt Center"). Id. ¶ 12. In that role, Reho reported to the Dean of Students, managed both daily and special events at the Pitt Center, supervised other SHU employees, and developed the Pitt Center's operating budget. See id. ¶ 13.

In December 2014, Reho received the results of neurological tests he had recently undergone. See id. ¶¶ 16–17. His doctors, including Christine McCarthy ("Dr. McCarthy") and Srinath Kadimi ("Dr. Kadimi"), determined that his test results were consistent with the onset of dementia. See id. ¶ 17. Reho informed SHU of Dr. McCarthy's conclusions shortly thereafter and provided SHU with the "Neuropsychological Evaluation Report" from his December 22, 2014 evaluation. Id. ¶ 19. That Report contained Dr. McCarthy's note that Reho's "cognitive functioning and emotional wellbeing [would] be improved by returning to work." Id. ¶ 18–19. It also identified accommodations and modifications to Reho's professional responsibilities that Dr. McCarthy recommended. Id. ¶ 19.

Between February and June 2015, employees of SHU's Human Resources Department corresponded with people affiliated with the medical practice—Associated Neurologists of Southern Connecticut, P.C.—from which Reho had received his diagnosis. See id. ¶ 20. Among these communications was an inquiry into whether Reho remained capable of performing his job responsibilities. Id. In a June 10, 2015 letter sent to SHU's Executive Director for Human Resources Julie Nofri, Dr. McCarthy made clear that "Mr. Reho is NOT described as an ' . . . individual who is possibly a candidate for legal conservatorship' in any portion of my report of his December 2014 neuropsychological evaluation." Id. ¶ 21. Dr. McCarthy further characterized portions of

3

a letter from SHU that claimed she had opined that Reho was unable to perform the essential functions of his job as "an entirely incorrect and inaccurate account of the overall gist of the professional opinions that I related over the course of our past telephone conversations." Id. ¶ 22.

On August 27, 2015, Reho was terminated as Director of the Pitt Center. Id. ¶ 24. This decision was made notwithstanding the fact that, throughout his employment with SHU, Reho "never received verbal or written warnings, disciplinary actions, or reprimands," id. ¶ 14, and "received high praise in each of his annual performance reviews," id. ¶ 15.

### III.   LEGAL STANDARDS

In reviewing a Motion to Dismiss pursuant to Rule 12(b)(6), the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt., 843 F.3d 561, 566 (2d Cir. 2016) (citing City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG, 752 F.3d 173, 179 (2d Cir. 2014)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" In re Actos End-Payor Antitrust Litig., 848 F.3d 89, 97 (2d Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.[3]

---

[3] Reho's invocation of Conley's "no set of facts" standard is puzzling, particularly as it follows several citations to Iqbal and Twombly. See Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Partial Dismissal (Doc. No. 24) at 2–3. Given that the Supreme Court has made clear that Conley's "no set of

## IV. DISCUSSION

SHU's Motion for Partial Dismissal articulated three grounds for dismissal: (1) that punitive damages may not be awarded for CFEPA claims; (2) that Reho failed to state a claim for negligent infliction of emotional distress; and (3) that Reho failed to state a claim for intentional infliction of emotional distress.  See Motion at 1.  As for the first, the FAC has removed any claim for punitive damages under the CFEPA, see FAC at 8, and as for the second, Reho has represented that he is not seeking damages for negligent infliction of emotional distress, see Obj. at 1 ("Where Defendant's Motion for Partial Dismissal also addresses a potential claim for negligent infliction of emotional distress, Plaintiff asserts they [sic] are not advancing such a claim.").  Therefore, to the extent the Motion for Partial Dismissal argues for dismissal on either of those two grounds, it is **TERMINATED AS MOOT**.

SHU's remaining argument for dismissal is that Count 3 fails to state a claim for intentional infliction of emotional distress.  See Mem. of Law in Supp. of Mot. for Partial Dismissal ("Mem. in Supp.") (Doc. No. 14) at 3.  More specifically, SHU contends that Reho has alleged that SHU engaged in conduct that, as a matter of law, falls short of being extreme and outrageous.  See id.  Reho's FAC suggests that the conduct he alleges is "extreme and outrageous" was SHU's "terminating the Plaintiff after twenty-five years of exceptional work due to the Plaintiff's disability."  See FAC ¶ 37.  In his Memorandum in Opposition to the Motion, Reho further points the court to his allegations regarding "multiple false statements regarding Plaintiff's health and ability to work . . . ."  See Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Partial Dismissal ("Mem. in

---

facts" standard "has earned its retirement," see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007), counsel is advised to avoid reliance on such outdated standards in future submissions to this court.

5

Opp'n") (Doc. No. 24) at 4.  It thus appears Reho alleges extreme and outrageous conduct relating to SHU's (1) termination of his employment after twenty-five years and (2) erroneous attribution of certain statements to Dr. McCarthy.

To recover damages on a claim of intentional infliction of emotional distress, plaintiffs must show

> (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe.

Carone v. Mascolo, No. 3:06–cv–1094 (DJS), 2007 WL 2318818, at *3 (D. Conn. Aug. 14, 2007) (quoting Petyan v. Ellis, 200 Conn. 243, 253 (1986)).  "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine."  Appleton v. Bd. of Educ. of Town of Stonington, 254 Conn. 205, 210 (2000) (citing Bell v. Bd. of Educ. of City of W. Haven, 55 Conn. App. 400, 410 (1999)).  The parties agree that conduct is "extreme and outrageous" if it "go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community."  Morrissey v. Yale Univ., 268 Conn. 426, 428 (2004) (per curiam) (quoting Carrol v. Allstate Ins. Co., 262 Conn. 433, 443 (2003)); see also Mem. in Supp. at 4; Mem. in Opp'n at 3.  To succeed on a claim of intentional infliction of emotional distress, "[g]enerally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!"  Morrissey, 268 Conn. at 428 (quoting Carrol, 262 Conn. at 443).

6

"[I]n the employment context, the Connecticut Supreme Court has set the bar even higher for what could be considered extreme and outrageous conduct: '[I]t is clear that individuals in the workplace reasonably should expect to experience some level of emotional distress, even significant emotional distress, as a result of conduct in the workplace.'" Pottie v. Atl. Packaging Grp., LLC, No. 3:12–cv–773 (WIG), 2012 WL 6087282, at *2 (D. Conn. Dec. 6, 2012) (quoting Perodeau v. Hartford, 259 Conn. 729, 757 (2002)).  Furthermore, the parties agree that it is the employer's conduct, rather than the motive behind it, that must be extreme and outrageous.  See Mem. in Supp. at 6 (quoting Hopkins v. New England Health Care Emps. Welfare Fund, 985 F. Supp. 2d 240, 260 (D. Conn. 2013)); Mem. in Opp'n at 4 (quoting Sousa v. Roque, No. 3:05–cv–822 (JCH), 2005 WL 3543721, at *3 (D. Conn. Dec. 16, 2005)).  Without more, ADA violations do not constitute extreme and outrageous behavior.  Richter v. Conn. Judicial Branch, No. 3:12–cv–1638 (JBA), 2014 WL 1281444, at *11 (D. Conn. Mar. 27, 2014) (citing Armstead v. Stop & Shop Cos., Inc., No. 3:01–cv–1489 (JBA), 2003 WL 1343245, at *5 (D. Conn. Mar. 17, 2003)).

Here, there are no factual allegations that SHU engaged in any conduct that could plausibly be characterized as extreme and outrageous.  First, however exceptional Reho's work during over his twenty-five years working for SHU, see FAC ¶ 38, there is nothing extreme or outrageous about terminating a longtime employee, see Williams v. Deloitte Servs., LP, No. 3:09–cv–17 (JCH), 2009 WL 3571365, at *3 (D. Conn. Oct. 29, 2009) ("This court has held that routine employment action, even if made with improper motivations, does not constitute extreme or outrageous behavior." (quotation marks and citation omitted)).

7

Nor does Reho offer any support for his conclusory assertion that SHU's mischaracterization of Dr. McCarthy's statements constitutes extreme and outrageous conduct that would be actionable by Reho.[4]  The FAC and the Memorandum in Opposition both mention these allegedly false characterizations, see FAC ¶¶ 20–22; Mem. in Opp'n at 4–5, but do not allege that Reho knew about them or that they caused him emotional distress.  Although these allegations may well be relevant to Reho's discrimination claims in Counts 1 and 2, it is entirely unclear how SHU's attribution of erroneous statements to Dr. McCarthy caused Reho severe emotional distress.  See Carone, 2007 WL 2318818, at *3 (noting that one element of intentional infliction of emotional distress claim is severe emotional distress).

Moreover, SHU points the court to several cases in which employers' allegedly false statements about their employees did not constitute extreme and outrageous conduct.  See Reply at 4 n.3 (citing, inter alia, Bator v. Yale-New Haven Hosp., 73 Conn. App. 576, 577–79 (2002) (per curiam) (striking claim in which employee alleged, in part, that "a supervisor falsely accused the plaintiff of endangering a patient's life")).  By contrast, Reho does not offer a single case that he suggests is analogous to his own, such that his allegations are sufficient to state a claim for relief.  See generally Mem. in Opp'n at 4–5.

Indeed, despite protestations to the contrary, see Mem. in Opp'n at 4, the gravamen of Count 3 appears to be Reho's claim that "[d]espite attributing multiple false statements regarding Plaintiff's health and ability to return to work . . . the Defendant

---

[4] Allegations about these allegedly "false medically-related statements," see Mem. in Opp'n at 4, appear in the FAC, see FAC ¶¶ 20–22.  Therefore, contrary to SHU's contention, see Reply at 4 n.3, the court may consider these allegations in ruling on the pending Motion.

8

failed to engage in the interactive process required under the Americans with Disabilities Act . . . ," see id. at 4–5 (emphasis added). Yet Reho helpfully points out that, to maintain a claim for intentional infliction of emotional distress, "a plaintiff needs to allege more than just a violation of the Americans [w]ith Disabilities Act . . . ." Mem. in Opp'n at 3. This court has frequently held that "[f]ailure to accommodate plaintiff's disability and refusal to communicate openly with plaintiff regarding his employment status do not rise to the level of exceeding all bounds usually tolerated by decent society." Armstead, 2003 WL 1343245, at *5.

In sum, Reho has failed to plausibly allege any extreme and outrageous conduct on the part of SHU. As such, SHU's Motion to Dismiss Count 3 is **GRANTED**.

## V.   CONCLUSION

In light of the foregoing, SHU's Motion for Partial Dismissal (Doc. No. 13) is **GRANTED IN PART** and **TERMINATED AS MOOT IN PART**.

**SO ORDERED.**

Dated at New Haven, Connecticut this 15th day of March, 2017.

                                              /s/ Janet C. Hall
                                             Janet C. Hall
                                             United States District Judge